The mother appeals from judgments of the Juvenile Court finding her unfit to parent Zadie and Amy, and awarding permanent custody of the children to the father.[3] The judge did not terminate the mother's parental rights. The mother raises three arguments on appeal. We discern in the mother's several claims of error no cause to disturb the judgments, and affirm.
Background. We summarize briefly the findings of fact entered by the judge, which we adopt absent clear error. The mother and father met in 2000 and married in July, 2001. The children were born in 2002 and 2007. Both the mother and father have a history of mental health and substance abuse issues, and there were allegations of domestic abuse within the home. Before the instant care and protection petition was filed, the children were subject to a similar petition in 2009, and several G. L. c. 119, § 51A, reports concerning the family were filed from 2010 through 2012, all of which were investigated and screened in by the Department of Children and Families (department). The mother and father separated in 2012 after the mother obtained a restraining order against the father based on an allegation of domestic violence.[4] The children remained with the mother.
In April, 2013, the mother and children obtained a shelter placement. Between December 31, 2013, and January 15, 2014, additional G. L. c. 119, § 51A, reports were filed alleging neglect of the children by the mother. During its investigations of these reports, the department learned that the children had expressed unhappiness with their living conditions in the shelter,[5] were not clothed properly when attending school, lacked proper hygiene, and were often violent toward each other. The department was awarded emergency custody of the children on January 17, 2014. Both the mother and father stipulated to their unfitness to parent the children on April 1, 2015.[6]
After the children were removed from her care, the mother was unable to continue living in the shelter and struggled to find housing. Despite the department's efforts to persuade the mother to seek a different shelter placement, including the possibility of moving into the home of the children's maternal grandmother, the mother chose to cycle between living out of her car, living at the home of her boy friend (not the father), and living at the home of the children's maternal grandfather (about which the department had already expressed safety concerns). At trial, the mother first stated that she was living with her boy friend, then stated that she was homeless, and finally stated that she was living in the maternal grandfather's home.
From the time the children were placed in the department's custody through the time of trial, the mother was continuously noncompliant with her service plan tasks and refused to engage in services. She was also unreliable in scheduling and attending visits with the children. The mother testified that she was employed at the time of trial; however, she presented no evidence concerning her income.
The father moved to New Hampshire after his separation from the mother. He collects Social Security Disability Income as a result of a back injury suffered in 1990, and receives food stamps. He was fully compliant with his service plan after the department took custody of the children. As part of his service plan the father consistently attended mental health treatment and, despite his previous denial of domestic violence allegations, completed a forty-week "Batterer's Intervention Program" at his own expense. He also "remained substance abuse free" at the time of trial.
In April, 2015, the department placed the children with the father after he rented an apartment large enough for both himself and the children. After the placement he freely allowed the department and various social workers and other service professionals to visit the home and work with the family, and the department has had no concerns with the children's care since their placement.
Discussion. "[C]ustody orders and judgments are made on the basis of a determination of the best interests of the child ...." R.H. v. B.F., 39 Mass. App. Ct. 29, 39 (1995). "[O]ur attitude toward a trial judge's decision in a custody appeal is one of substantial deference.... [O]ur task is not to decide whether we, presented with the same facts, would have made the same decision, but to determine whether the trial judge abused his discretion or committed a clear error of law." Adoption of Hugo, 428 Mass. 219, 225 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999). Subsidiary findings made by the judge will not be disturbed unless clearly erroneous. Adoption of Gregory, 434 Mass. 117, 126 (2001).
Here, the judge properly considered the best interests of the children in making her decision. Under the father's care the children live in a stable home, supported by a stable source of income. The father takes the children to all medical and dental appointments. The children adjusted well to living with the father, and both have done well in school since being placed in his custody. The father has also shown the ability to recognize both his own problems and the problems of the children, and has been proactive in seeking services to address those problems.[7] As discussed above, the father has been fully compliant with his service plan and is leading a sober lifestyle. Based on this evidence, as well as additional findings clearly supported by the record, we discern no error in the judge's conclusion that the father's changed circumstances made him fit to resume parental responsibilities and take custody of the children.
In contrast, the mother was unable to demonstrate any change of circumstances that would warrant a modification since she stipulated to her unfitness. The mother failed to alter her turbulent housing situation, and rebuffed opportunities to move into housing that would be appropriate for the children. See Adoption of Anton, 72 Mass. App. Ct. 667, 676 (2008). She also failed to engage meaningfully in her service plan, which required both mental health and substance abuse treatment, and failed to communicate adequately with the department. See Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2005). Her testimony at trial also reflected a failure to understand why such requirements were necessary. We discern no abuse of discretion in the judge's determination that the mother remained unfit to parent the children.
We also conclude that the requirement that the judge make detailed findings concerning domestic violence was satisfied. See Custody of Vaughn, 422 Mass. 590, 599-600 (1996). In particular, finding no. 217 specifically cites Vaughn, stating that although there was no finding of domestic violence, the judge carefully considered the issue of domestic violence, acknowledged the department's concerns about the issue, and noted the father's successful completion of the Batterer's Intervention Program. The judge further stated that there were no safety concerns or allegations of physical force or violence since the children were placed with the father. Cf. Care & Protection of Lillith, 61 Mass. App. Ct. 132, 142 (2004) (requiring remand due to paucity of findings concerning domestic violence).
Finally, there is ample evidence in the record demonstrating the department's continued attempts to reunify the children with the mother. The department repeatedly made efforts to engage the mother in services in an attempt to create a suitable environment for reunification. Before and after the children were removed from the mother's custody, the department attempted to provide the mother with services, including in-home therapy and referrals for both housing and mental health services. The mother's refusal to take advantage of these services does not indicate a failure on the part of the department. See Adoption of Mario, 43 Mass. App. Ct. 767, 774 (1997). Additionally, the department cannot be faulted for canceling a proposed foster home change for the children that would have placed them closer to the mother, as the cancellation occurred after the guardian ad litem for the children objected to the move as not being in the children's best interests. Under these circumstances, there was no failure on the part of the department to make reasonable efforts to reunify the children with the mother.
Judgments affirmed.

The third child born to the couple remains in the custody of the Department of Children and Families and is not a subject of this appeal.

The father was found not guilty after a jury trial on an assault and battery charge.

The shelter placement was infested with mice, cockroaches, and bedbugs.

The mother and father were divorced on February 2, 2015.

When he felt that his medications needed to be adjusted, the father met with his physician to correct the problem. He also sought treatment for one of the children after recognizing the symptoms of an eating disorder.